Mr. Parsons, I'd like to save four minutes for rebuttal, and I'm going to start my timer now. Excuse me, I'm not seeing either of the... Let me see, maybe I'm doing something wrong here. If the little box is down below, if you'll put your mouse over them, you'll see their name. I see it, okay. If you click in the corner for the pin, that should pop them up to your... Alright, okay, sorry. The offense for which my client was sentenced is not just an attempted state offense. It has much harsher penalties and different elements than an attempt to engage in unlawful sexual activity with a minor under South Dakota law. It is especially important to keep federal offenses within the bounds set by Congress when, as Justice Stevens and Thomas wrote in their concurrence in Jones, the residential arson case that we cite in our reply brief, when the harsher federal penalty may effectively displace a policy choice by the state. Our brief showed that the government's proof of the federal offense fell short in three ways, but I'd like to focus first on what I think is the narrowest and most direct path to reversal. It is the narrowest path because it stems from a case-specific decision about how to conduct this sting operation. It is the most direct path because the essential facts and legal principles aren't really disputed in briefs. I'd like to begin with four quick points. First, for an attempt, the government had to prove that my client intended to, using any facility or means of interstate or foreign commerce, knowingly persuade, induce, entice, or coerce any individual, a minor, to engage in sexual activity in violation of state law. Second, the parties agree that for purposes of sufficiency and disappeal, the only facility of interstate commerce that matters is the Internet. Third, the government didn't claim at trial and doesn't claim on appeal that my client knew, or that they proved that my client knew, that the fictitious Kelly was 15 years old when he was using the Internet to communicate with her via Craigslist. Generating a relationship, the term that's used in the government's brief, with someone you don't know is 15 doesn't satisfy the elements, the knowledge element of the federal defense. Fourth, the evidence shows that my client did not use the Internet to send text messages after he did learn from Kelly that she was supposed to be 15. And so at trial, the government argued that it was enough that the police used the Internet without his knowledge to connect to the cell tower network. On appeal, the government argues that there was no knowledge requirement for use of the Internet, but that isn't the issue. The issue is, did the government prove that my client used the Internet to persuade, entice, induce, or coerce a minor to engage in unlawful sexual activity, and he did not use the Internet in sending and receiving text messages. Knowledge enters into it only in the sense that if the government had argued, which it did not, that the police use of the Internet could be attributed to my client, it would have to satisfy the standard in the Supreme Court decision to agree with, which requires that he knew and that he actively sought the use of the means of interstate, I'm sorry, the interstate facility by somebody other than himself. But the statute requires use by the defendant, not use by someone else. Mr. Rogers, can I ask you a question? I think one of the issues may be whether the use of the Internet before they switched to texting imparted knowledge to your client that may not be that she was 15, but that she was underage or very young. What's your position on whether that satisfies the element? And secondly, is it all part of one course of conduct so that the fact that the knowledge of actual age didn't occur until after the texting, but the use of the Internet was part of the whole course of conduct? Let me answer the factual part of the question first and then the legal part, if I may. I think the factual part of the question is no, the communications over Craigslist did not tell my client that Kelly was a minor or that she was 15, and he had to know both because the sexual activity would not have been unlawful unless she was under 16. And we know that for a couple of reasons. First of all, we know that from the immediate expression of surprise and astonishment. When Kelly, when they do switch to text messages, says that she's 15, my client immediately, well, not immediately, after a two-minute pause, writes back and says, didn't you read my ad? And so it's clear, A, that he wasn't looking for somebody of that age, and B, that he was quite surprised by the information that she had just provided. So that's one important piece of information. Another important piece of information is the factual finding that the trial judge made in allowing the entrapment instruction. He looked at the Craigslist ad and ruled that the ad did not signify that he was looking for somebody underage. And so what we have is a factual record that my client had no reason to believe or expect that somebody age 15 would be responding to the ad. And I guess the third piece of information is that, although this is certainly not an impermeable barrier, that one reason you would not have expected somebody of that age to be responding to the ad is that you had to certify that you were at least 18 to sign on to that section of Craigslist at the time. So that's the factual part. I'm sorry, Judge Smith. Is a telephone an instrument of interstate commerce? When one uses a cell phone, I know the location of towers can be local, but isn't there a sense of interstate commerce when accessing telephones and a sense that that is information that's likely to be transmitted via the Internet in this time and day? I don't think there's a sense that telephone calls are transmitted ordinarily via the Internet. Judge Malloy, I do want to come back to your question, but I just want to make sure I understand your question, Judge Smith. I think the government has acknowledged, and this is on pages 9 and 22 to 23 of their brief, that they're not relying on interstate text message transmissions to satisfy the interstate facility element in this case. And so I will address that issue if the court wants me to, but otherwise I wouldn't. The communications that pass between cell towers don't involve the Internet. And the evidence in this case is purely that the cell tower communications, certainly from the perspective of my client, were not via the Internet. What the record shows is that the police were using a computer to connect to the cell tower network, which was then sending the text messages back and forth. If I could return to the second part of Judge Malloy's question, it can't be a single course of conduct. The statute requires that the facility of interstate commerce be used to carry out the criminal activity. And so they have to be concurrent. In terms of the way the statute is written, that's also consistent with the court's model jury instructions, the jury instructions that were requested in this case by the government, and by the instructions that were given. It's also supported by the fundamental principle of criminal liability, which is that there has to be a concurrence between the criminal conduct, the actus reus, and the mens rea. And that's reflected in the Bailey case, the prison escape case that's in 444 U.S. It's also applied by the Supreme Court in the Mortensen case, which is a Man Act case, which is really the statutory progenitor of Section 2422B. And the point is that the mens rea doesn't have to exist for every moment of the interstate transportation, but it has to coincide. Now, this would be a different case if there were evidence that my client had been looking for an underage person at the very beginning. Then, maybe the jury could have inferred the requisite mens rea from the Craigslist communications, even if you didn't know how old Kelly was actually supposed to be. Counsel, talking about the Craigslist communication, couldn't that intent be gleaned from the photograph that was sent, and also this supposed minor referred to her mom, that she had to stop replying because of her mom? Don't those indicate something about age? They indicate something about age, but they don't indicate that she was a minor or that she was under the age of 16. The photograph shows that she's younger. I think it's very hard to tell what the age is. The government didn't argue that the photograph proved age. I think in terms of somebody living at home with their mom, it's just a fact of life that lots of children live with their parents past the age of 16 and certainly past the age of 18. I don't think either of those facts are sufficient to have allowed the jury to infer that my client knew, particularly in light of his response when Kelly says she is 15 and he says, didn't you read my ad? It's my client's subjective mental state that had to be proved here, and I think the only inference that you can draw from his immediate, in real time response was surprise and amazement. I'm into my rebuttal time, and I'd like to reserve a little bit of it, but if there are more questions, I certainly would like to answer them. Let me just close by saying we have also argued that the government's case fell short in two additional respects. They follow from what we think is the correct reading of the element of persuade, induce, entice, and coerce in the statute. We're not adding another element. It's the element that Congress provided, and I think that both Judge Brown's opinion and worries, which, as she noted, was not disagreed with by either of the other two judges on that panel, except as to whether it was plain error, and the unanimous decision in Hite, the decision of the Fourth Circuit in Clark, all support our interpretation of what that element means. We've also argued that there are fundamental canons of statutory construction that support that. For those reasons, the government also had to prove, but did not prove, that my client intended to overcome, transform, or alter the will of a minor, and had to prove that he was predisposed to alter the will of a minor. My time is about to expire, so I'd like to reserve whatever is left for rebuttal. Thank you. Thank you, Mr. Reiser. Mr. Parsons? Thank you, Chief Judge Smith, and may it please the Court and my friend, Mr. Reiser. Over the course of a little more than 24 hours, the defendant here attempted to entice a minor to have sex with him when he believed that the child's mother was away at work. It began with a receipt of the age-regressed photograph on Monday evening, and it culminated in his arrest at a Rapid City high school with blankets and beer, ready to have sex with the girl he'd been attempting to entice. The enticement took place entirely on the same Galaxy Samsung phone. Every message sent and received was on that phone, and he was using that phone because he was visiting from Colorado for the Sturgis rally. The instrumentality of interstate commerce never changed. What changed at some point, maybe a third of the way through the enticement, rather than the communications going over Craigslist, they were going through text. But the phone was a constant, and as I will attempt to show here, that's really what matters in this case. Now, I'm not trying to walk away from any concession that may have been made in the brief, but I also want to be very careful not to go a millimeter beyond what our brief says in terms of what is a concession. We were not relying solely on the interstate text messages to prove jurisdiction, but we were relying, as the indictment said and as the jury instruction said, on the use of the phone. At all times, every message sent or received by that phone went through the internet. When they were on Craigslist, it went directly through the Craigslist app on the internet. When he was texting, when his phone was using its texting feature, those messages, again, went through the internet. The law enforcement agent did not have a phone at all. The messages were being sent to the law enforcement agent's computer connected to the internet, and that's how the messages were returned. So I think it's important to note that the Commerce Clause for a jurisdictional element does not require an understanding of how the technology works. So it's our argument, and I think it's supported by case law, that he does not have to know what's happening when he's pressing the buttons on his phone and where that thing is going, how it's being routed. There's certainly a possibility that when someone is texting, if you study this, that it's going to go through the internet, whether it's a law enforcement person or not. You just don't know. Most people have no understanding. If I asked my grandfather or my grandmother how text messages and emails work, they wouldn't tell you. They'd probably say it's a series of tubes, as you sometimes hear. The jurisdictional element does not require knowledge that there was a connection to the internet. Well, what is the concession that you made that text messages in and of themselves do not support interstate jurisdiction? You say you're not walking away from the concession, but it sounds like you're walking away from the concession. I'm trying not to go beyond it. I think the concession is that we agree that we did not charge or prove that his interstate text messages were the basis for jurisdiction in this matter. The basis for jurisdiction in this matter was the use of the phone to get on Craigslist and communicate through Craigslist. Then, after he started texting, it was the use of the routing of the text messages through the internet. In all circumstances, the phone was the means. How did you prove both of those? Did you have someone testify that a Samsung phone is made up of components that were shipped in interstate commerce? Did you ask judicial notice? How did you prove that the text messages went through the internet when they were received? We did not put on evidence about the components of the phone. We were relying on the fact that the text messages and the other messages, all the messages, were routed through the internet. The testimony was on primarily pages 182 and 183 of the trial transcript and 208 and 209 of the trial transcript, where the agent described that Craigslist inherently is always on the internet and that, in this case, when the texting occurred, the texts were received over the internet by law enforcement and their responses were sent back by law enforcement. How can you rely on the instrumentality of interstate commerce if you put on no evidence of the instrumentality? The instrumentality was the internet capable phone. We did put on evidence that the phone connected to the internet. There was a stipulation that it was an internet capable phone. That was our jurisdictional argument. It's unlikely that the phone was entirely manufactured and assembled in South Dakota, but don't you have to at least have some evidence that the components came from outside South Dakota or was assembled outside South Dakota? Can you just say, well, it was a phone and that's enough? Well, in this case, we didn't say it was a phone and that's enough. We said it was the phone connected to the internet and the internet was the jurisdictional component. There was no evidence of record about the manufacture of the phone. I thought I misunderstood your argument. You're not arguing that the phone itself is the instrumentality. It's the fact that it was connected to the internet that makes it... The internet capable phone. You could have put on evidence that the phone itself was manufactured outside the state, couldn't you? We could have. But that's not your argument. That's right. We did not do that in this case. I think when you look at whether the crime has been committed, I think it's conceptually wrong to go back and say, all right, was this sentence, this text, was that part of the enticement? Was that on the internet or sufficiently connected to the internet? I don't think that's the way you look at it. I think enticement, in a jurisdictional sense, when you're talking about whether this occurred using interstate commerce, it was a course of conduct. The enticement began when he got the age regressed photo of what looks to me like an eighth grader, but that was a jury question. All these are jury questions. You view the evidence in the light most favorable to the jury verdict. If a reasonable jury could have found it, beyond a reasonable doubt, the elements. And he's got a picture of what looks to me like an eighth grader. Looks certainly as a young girl. And it's in response to an ad advertising, if you want to have sex with a biker. And the immediate response is to call her a sweet young girl, I think. Then it ends and she explains when they get reconnected that my mom came home so I had to stop texting. The sexual nature of this enticement began from the very beginning almost. He's talking about when you get serious, call me. What do you mean serious? Serious about having fun. That's all over the internet. Then when the texting begins, and still I want to make clear that when he's texting, that's going out and being received by the internet. The law enforcement agent is using the internet to receive it. And my argument is under the law. He doesn't have to know that the internet's involved at that point either. But he gets much more serious. Then he says, hey, how old are you? She says, I'm 15. Now, my friend Mr. Reiser says, well, he reacted with astonishment and surprise. Well, we don't know what's in his mind. That's for the jury to determine what's in his mind. But so within six minutes of him finding out that she's 15, he's talking about sex and trying to arrange for sex with her. I mean, he was in a hurry. This guy jumped at the chance. He was on vacation. And within less than 24 hours, he's there. He's talked about what kind of sex he wants to have with her and so forth. And I won't go into all the details. But jurisdictionally, I think it's enough that the crime was committed, in part, using the means of interstate commerce, which by that I mean a phone connected to the internet and the messages went through the internet. There's no law that says the entire crime must have occurred via interstate commerce. And I think that's the argument that's being made here. There just has to be a nexus to interstate commerce. And here you have the internet being connected to a phone, and that was the nexus. And so I think to try to parse it out any differently puts us beyond the burden of proof here. It's also really important that there were no objections to the laws instructed. There were no post-trial motions. This is truly just a sufficiency of the argument case. And it's an attempt case. So the entire crime does not have to be shown. We merely have to show he attempted to entice a minor and that he used the internet to do that. And there's no doubt that he did. A reasonable jury could certainly conclude that. And that is our argument. If the court has any additional questions, I'm happy to answer them. I think this case was proved. Every element was proved. The statutory language was recited in the jury instruction. The statute does not require a knowledge element regarding interstate commerce, similar to many statutes and many of this court's cases addressing similar statutes that likewise don't have a knowledge element tied to the interstate commerce nexus. So this person used the internet, used his phone connected to the internet, to entice what he thought was a 15-year-old girl. The jury found that he did it, properly instructed, and this court should affirm. Thank you, Your Honor. Thanks, Mr. Parsons. Mr. Reiser, you were in both. Thank you, Your Honor. Let me just try to go very quickly. First, I think it's really important to understand that the issue here is not whether there was serious criminal conduct committed, whether there was a violation of South Dakota law and an attempt crime that could have been prosecuted under South Dakota law. I think it's a defensible case on entrapment, but that's for a South Dakota jury to determine. The question is, what is the basis for federal jurisdiction and did the government prove those elements? Judge Molloy, if I could just refer you to pages 9 and 22 to 23 of the government's brief for the concessions that I think to some degree Mr. Parsons is walking away from or at least trying to. The third point I want to make is that it is not enough to prove use by the defendant of the Internet that unknown to him the police were using the Internet. If you read their brief, they talk about the police use. If you read the closing argument, they talk about police use. And so the only question is, is that use by the defendant? In addition to the cases that we cited in our brief, I would refer the court to Leo Cow versus Ashcroft, which is an immigration case, but it involves an interpretation of use in 18 U.S.C. section 16. And the court makes it clear that use is more than just negligence or accident. And so my client did not use the Internet to send the text messages. That's clear. The police use is not enough. The last thing I would just say, and this is just to respond to a question that you asked to my colleague, Judge Malone. I don't think that the interstate transportation of the phone or its components would be sufficient under this statute, unlike some other statutes like the child pornography statute. They didn't try to prove that. But I think that may be the reason. The phone itself is a physical object. Having been transported in interstate commerce would not have been enough. I know I'm over my time. Thank you very much for all of your patience today, and I appreciate the opportunity. Thank you, Mr. Reiser. Thank you also, Mr. Parsons. The court thanks both of you for coming and providing argument to us to supplement the briefing that has been submitted. And we'll take the case under advisement and render a decision in due course.